**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-0150-WJM-CBS

BRIAN LAMONT SWEENEY,

    Plaintiff,

v.

DR. (FNU) ALLRED,
DR. NIXON ROBERTS,
CAPTAIN (FNU) KLINE, and
WARDEN (FNU) T. K. COZZA-RHODES,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On January 1, 2017, Plaintiff Brian Lamont Sweeney ("Plaintiff") filed a Complaint (ECF No. 1) ("Complaint") asserting claims for deprivation of his Eighth Amendment rights against Defendants Dr. (FNU) Allred, Dr. Nixon Roberts, Captain (FNU) Kline, and Warden (FNU) T.K. Cozza-Rhodes (collectively, "Defendants"). On June 9, 2017 Defendants filed their Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (ECF No. 31) ("Motion"). Plaintiff filed his Response to Defendant's Motion (ECF No. 49) ("Response") on September 8, 2017, to which Defendants filed a Reply (ECF No. 50) ("Reply") on September 12, 2017. On December 6, 2017, United States Magistrate Judge Mark L. Carman issued his Recommendation and Order (ECF No. 54) ("Recommendation") granting Defendants' Motion for Summary Judgment. Plaintiff filed his "Objections to Magistrate's

Recommendation and Order" (ECF No. 59) ("Objection") on January 8, 2018. For the reasons set forth below, Judge Carman's Recommendation is adopted in its entirety and Plaintiff's Objection is overruled.

## I. BACKGROUND

Plaintiff, proceeding *pro se*, is a prisoner in the custody of the Bureau of Prisons ("BOP") and was formerly housed at United States Penitentiary Florence ("USP Florence"). (ECF No. 1 at 10.) Plaintiff claims that on or about February 21, 2015, while at USP Florence, he slipped and fell in his cell, injuring his jaw. (*Id.* ¶¶ 8–9.) The fall "loosened seven teeth in [Plaintiff's] lower jaw." (*Id.* ¶ 9.) According to Plaintiff, he was taken to the Lieutenant's office, where the Lieutenant "called [Plaintiff] a liar and ordered that [Plaintiff] be placed in the Special Housing Unit ('SHU'), for administrative segregation, until [Plaintiff] changed his story." (*Id.* ¶ 12, 14.) Plaintiff claims he "informed SHU staff of his injuries and his need for treatment, and a liquid diet, upon his admittance in SHU" (*id.* ¶ 16) and that "SHU staff refused to provide treatment or document [Plaintiff's] need for a liquid diet" (*id.* ¶ 18).

According to Plaintiff, on February 23, 2015, Defendant Dr. Allred "noted possible jaw fracture but did not do anything but give X-ray." (*Id.* ¶ 21.) Plaintiff claims that these X-rays revealed that "numerous teeth were dislodged from his lower jaw." (*Id.* at ¶ 23.) Defendant Dr. Roberts also assessed Plaintiff's injuries. (*Id.* ¶ 24.) Plaintiff states that Defendant Roberts "told [Plaintiff] that he needed treatment, but told [Plaintiff] that unless he changed his story of how he received the injuries, he would not received [*sic*] any medical treatment, and might loose [*sic*] his teeth." (*Id.* ¶ 26.)

2

Additionally, Plaintiff states that the SHU lieutenant and Defendant Captain Kline "told him that if he did not tell them the truth of how he was injured, they would place [Plaintiff] in the cell with the inmate who they believed caused the injuries." (*Id.* ¶ 30.) Defendant Kline "then told [Plaintiff] that unless he changed his story, he would not receive any medical treatment, or medicine for his injuries." (*Id.* ¶ 32.)

Plaintiff is diabetic and during this time he had to "swallow whole unchewed food risking choking to death." (*Id.* ¶¶ 33–34.) According to Plaintiff, this caused "sever [*sic*] stomach pain, and fluxuation [*sic*] of his sugar levels." (*Id.* ¶ 34.) "Twice during his stay in SHU, [Plaintiff] lost consciousness due to his being unable to eat enough food to sustain proper blood sugar levels, because he could not chew the solid foods they gave him." (*Id.* ¶ 37.)

Plaintiff alleges that this "denial of medical treatment continued until on or about March 6, 2015" (*Id.* ¶ 36), when Defendant Warden T.K. Cozza-Rhodes "ordered [Plaintiff] to be taken to the Dental Department for evaluation and treatment" (*id.*). During the dental examination, Plaintiff "was told that they would have to remove all his bottom teeth." (*Id.* ¶ 38.) Plaintiff claims that "[t]he reason they had to remove his teeth was the delay in treatment." (*Id.* ¶ 39.)

Plaintiff brings this Complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (ECF No. 1 at 3.) In addition to monetary damages, Plaintiff seeks declaratory and injunctive relief. (*Id.* ¶ 45.) In their Motion, Defendants contend that they should be granted summary judgment because Plaintiff failed to exhaust his administrative remedies as required by the Prison

Litigation Reform Act ("PLRA"), because he either filed his remedies at the wrong level or did not timely appeal those administrative remedies. (ECF No. 31 at 7–9.)

## II. LEGAL STANDARD

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*. An objection is proper if it is filed within fourteen days of the Magistrate Judge's recommendation and is specific enough to enable the "district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)).

Further, the Court is mindful of Plaintiff's *pro se* status, and accordingly reads his pleadings and filings liberally. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). The Court, however, cannot act as advocate for Plaintiff, who still must comply with the fundamental requirements of the Federal Rules of Civil Procedure. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1188 (10th Cir. 2003).

Summary judgment is appropriate only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III. ANALYSIS

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Here, Defendants argue that Plaintiff failed to satisfactorily exhaust all available administrative remedies. (ECF No. 31 at 7.)

The Bureau of Prisons has a four-tiered Administrative Remedy Program for inmate grievances. (*Id.* at 5.)

> The first step is the filing of an informal resolution (also known as a BP-8) with prison staff. The second step is the

5

> filing of a formal Request for Administrative Remedy (also known as a BP-9) at the institution in which the inmate is incarcerated. An administrative remedy at this level, and subsequent levels, is assigned a Remedy ID number and tracked in SENTRY. The third step occurs if the inmate is not satisfied with the response to his BP-9. Within 20 calendar days of the date the Warden signs the response, the inmate may then appeal the complaint to the Regional Director, by filing a Regional Office Remedy Appeal (also known as a BP-10). The fourth step occurs if an inmate is dissatisfied with the Regional Director's Response. In that event, an inmate may appeal to the Director, National Inmate Appeals, in the Office of the General Counsel in Washington D.C., by filing a Central Office Administrative Remedy Appeal (also known as a BP-11).

(*Id.* at 5–6 (citation omitted).) BOP specifies that "[a]n inmate has not exhausted all of his administrative remedies until he has properly and timely sought review at all three formal levels, that is, steps 2–4 as described above. Thus, in order to comply with the Bureau's exhaustion requirements, an inmate must properly file an administrative remedy or appeal at each step and obtain a final resolution from the Central Office before commencing suit." (*Id.* at 6.)

Here, Plaintiff filed eight administrative grievances relating to this case, however, according to Defendants he did not "complete the process in a satisfactory manner." (*Id*. at 7.) The filings and their deficiencies, as explained by Defendants, are listed below:

- Administrative Remedy Request No. 818416-F1 was filed on April 22, 2015 at the institutional level. In this filing, Plaintiff alleged deliberate indifference to his medical needs. Plaintiff's request was provided for informational purposes only and was closed on September 18, 2015. (*Id.*)

- Administrative Remedy Request No. 818416-R1 was filed on June 15, 2015 at

6

the regional level alleging staff misconduct. Plaintiff's request was rejected on June 15, 2015 because it was not a sensitive issue.[1] (*Id.*)

- Administrative Remedy Request No. 818416-A1 was filed on August 14, 2015 at the national level, alleging staff misconduct. Plaintiff's request was rejected on September 15, 2015 because he submitted it at the wrong level. (*Id.*)

- Administrative Remedy Request No. 818416-R2 was filed on October 19, 2015 at the regional level, alleging staff misconduct. This request was rejected on October 19, 2015 because Plaintiff did not provide a copy of the institution administrative remedy request (BP-9) form or a copy of the response from the warden. (*Id.* at 8.)

- Administrative Remedy Requests Nos. 818416-R3 and 818416-R4 were filed on November 5, 2015 and December 14, 2015, respectively. Both requests were filed at the regional level and alleged staff misconduct. Both administrative remedy requests were rejected for being untimely, because regional appeals must be received within 20 days of the warden's response. With both rejections, Plaintiff was instructed to provide a staff verification letter showing that the untimeliness was not Plaintiff's fault. (*Id.*)

- Administrative Remedy Request No. 818416-R5 was filed on January 25, 2016

---

[1] "If an inmate believes an issue is sensitive and his safety or well-being would be placed in danger if the Administrative Request became known at the institution, the inmate may submit the request directly to the appropriate Regional Director. The inmate must explain in the Request the reason for not submitting at the institutional level. If the Regional Administrative Remedy Coordinator agrees that the request is sensitive, the request shall be accepted. Otherwise, the request will not be accepted and the inmate shall be advised in writing of the determination without a return of the request. The inmate in this instance will then pursue the matter by submitting his request at the institution level." (ECF No. 31-1 ¶ 5.)

at the regional level. This remedy request alleged that he did not receive medical care. "A response to Plaintiff's appeal was provided for informational purposes only and closed by the Regional Director on February 5, 2016." (*Id.* at 8–9.)

- Administrative Remedy Request No. 818416-A2 was filed on March 8, 2016 at the national level, alleging staff misconduct. Plaintiff's request was rejected on March 23, 2016 for not providing copies of the institutional response. Plaintiff was instructed to resubmit his appeal in proper form within 15 days of the rejection notice. (*Id.* at 9.)

Thus, Defendants argue that Plaintiff never successfully appealed the Regional Director's response to Plaintiff's Administrative Remedy Request No. 818416-R5 to the Central Office. (*Id.*)

Plaintiff attached a copy of the rejection notice to his Response. (ECF No. 49 at 5.) At the bottom of the rejection notice, there is a handwritten note, presumably written by Plaintiff which states, "Put in mail 4-5-16 was on Lock Down 4-4-16." (*Id.*)

In their Reply, Defendants claim, "[n]one of these exhibits—nor Plaintiff's response itself—contain any admissible evidence that would create a genuine issue of material fact as to defendants' assertion that Plaintiff failed to exhaust administrative remedies with respect to his Eighth Amendment claim." (ECF No. 50 at 2.)

Judge Carman considered all of the exhibits presented by both parties and found that "there is no genuine issue of material fact that [Plaintiff] failed to successfully appeal—to the final step of the four-step grievance process—the Regional Director's informational response." (ECF No. 54 at 9.) Judge Carman acknowledged the

handwritten note attached to Plaintiff's Response brief, but explained that "[t]o meet his burden, [Plaintiff] 'must respond with specific facts demonstrating genuine issues requiring resolution at trial.'" (*Id.* (quoting *Thomas v. BOP*, 2008 WL 2498049, at *3 (10th Cir. June 24, 2008).) According to Judge Carman, here, "although Plaintiff claims to have timely submitted his appeal, he has not provided any actual evidence that would allow the court to conclude that Plaintiff's appeal was in fact submitted." (ECF No. 54 at 9.) On that basis, Judge Carman granted Defendants' Motion for Summary Judgment.

In his Objection, Plaintiff claims that "[t]he fact that he was thwarted from exhausting the administrative remedies[] is a genuine dispute as to a material fact that should prevent this Court from granting summary judgment." (ECF No. 59 at 3.)

After considering the parties' briefs and Judge Carman's Recommendation, the Court is persuaded by Judge Carman's reasoning and adopts his Recommendation regarding Defendants' Motion for Summary Judgment. In reaching its conclusion, the Court specifically considered Plaintiff's exhibits in his response and Defendants' exhibit ECF No. 31-3, which is a record of Administrative Remedy Generalized Retrieval ("Generalized Retrieval"). This Generalized Retrieval is a record of every Administrative remedy request filed by Plaintiff. (ECF No. 31-3.) The record shows filings from September 2015 through May 2017. (*Id.*)

Critically, the record shows no entries between the first March 23, 2016 818416-A2 filing and the April 27, 2016 860253-F1 filing. (*Id.*) Thus, there is no independent support for Plaintiff's claim that he put his appeal in the mail on April 5, 2016. (ECF No. 49 at 5.) This is important here because there is simply *no* evidence of when Plaintiff's

9

hand-written notation was made and, indeed, it very well could have been made after this action was commenced. Moreover, there is no evidence showing that he refiled Administrative remedy Request No. 818416-A2 at all. (ECF No. 31-3.)

Because there is insufficient indicia of the genuineness of Plaintiff's notation, in that there is nothing that can establish the contemporaneousness of Plaintiff's handwritten notice that he put his appeal in the mail, the Court agrees with Judge Carman that there is no genuine issue for trial as to whether he exhausted his administrative remedies. Accordingly, the Court overrules Plaintiff's Objection to Judge Carman's Recommendation, adopts Judge Carman's Recommendation in its entirety, and grants Defendants' Motion for Summary Judgment.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Objections to the Recommendation & Order (ECF No. 59) is OVERRULED;

2. The Recommendation and Order (ECF No. 54) is ADOPTED in its entirety;

3. Defendants' Motion for Summary Judgment is GRANTED;

4. Plaintiff's Motion to Find out how Long before Ruling on Objection Motion (ECF No. 60) is DENIED AS MOOT; and

5. The Clerk shall enter judgment in favor of Defendants and against Plaintiff, and shall terminate this case. The parties shall bear their own costs.

Dated this 26th day of March, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge